[APRIL TERM, 1902.]

ANDERSON v. RIDDLE.

RECEIVERS—JURISDICTION—PRIVIES—CONCLUSIVENESS OF COURT OR-
DER CONFIRMING APPOINTMENT OF RECEIVER UPON PARTIES AND
PRIVIES—MORTGAGEES.

1. Though an order appointing a receiver *pendente lite* in a
   foreclosure suit may be void because made before issuance of
   summons, a subsequent order, when the court has jurisdic-
   tion to make such an appointment, approving the accounts
   and actions of the receiver, and confirming the original order
   of appointment, will at least operate as an appointment as of
   its date, and an appropriation of the funds in the receiver's
   hands for the purposes of the case; and it will be conclusive
   upon parties and privies.

2. The receiver having been appointed for the benefit of the
   second mortgagee in a suit to foreclose that mortgage, wherein
   the first mortgagee is a party, the subsequent confirmatory
   order will conclude the latter, so as to preclude a recovery
   by him under an assignment from the mortgagor, pending
   suit, of the rents collected by the receiver, in a suit brought
   against the latter for that purpose.

3. The confirmatory order will not be void because made on
   the petition of the receiver; but if it be conceded that the re-
   ceiver had no right to invoke such action, the order would be
   merely irregular, the court having jurisdiction over subject
   matter and parties.

4. The first mortgagee cannot, pending suit, by a transfer of
   a partial interest in his mortgage to another having knowl-
   edge of the facts, place such transferee in any better position
   than himself to recover of the receiver the rents in his hands
   upon taking an assignment thereof from the mortgagor, where
   the rents have been collected for the benefit of the second
   mortgagee, and the invalidity, if any, in the original appoint-
   ment has been cured by a subsequent order with jurisdiction

conclusive upon the first mortgagee as one of the parties to the suit.

5.  Plaintiff held to be in privity with a first mortgagee, so as to be concluded with him by certain orders in a foreclosure suit brought by the second mortgagee, where the consideration of a deed to her from the mortgagor, pending suit, of the premises and back rents was a partial credit upon the first mortgage, which sum was claimed to have been given to plaintiff by her father through the first mortgagee, who owed the same to the father, and which had been loaned to the mortgagor and included in the mortgage; and as such privy was bound by an order confirming the original appointment of a receiver to collect rents for the benefit of a second mortgagee, so as to preclude her from recovering such rents of the receiver in a suit against him based upon an alleged invalidity in the original appointment.

6.  Defendant, having been appointed receiver *pendente lite* of the rents and profits of mortgaged premises for the benefit of a second mortgagee, and having as such collected rents, was sued therefor by plaintiff, who claimed the same under an assignment from the mortgagor, and whose right to recover was further based upon the alleged invalidity of the appointment of defendant. Plaintiff was a sister of the first mortgagee, who had appeared as a party on the record in the suit for the foreclosure of the second mortgage wherein the receiver was appointed, and who was concluded from questioning the appointment. *Held,* that plaintiff was also concluded as in privity with her brother, the first mortgagee, and that she was precluded from recovery, in view of her knowledge, her interest in the first mortgage, the consideration for the assignment of the rents to her, and the manner in which she acquired her interest and the assignment.

7.  One who is equitably interested in a first mortgage held in the name of another is bound to the same extent as the holder thereof by orders of court relating to the appointment of a receiver for the benefit of the second mortgagee in a foreclosure suit where the holder of the first mortgage is a party, and where the receiver is appointed of the rents and profits of the mortgaged premises as against the mortgagor and first mortgagee; and being so bound will not be permitted to recover of the receiver in a suit against him the rents collected by him, on the ground of lack of jurisdiction in the receiver's appointment, and under an assignment of the rents from the mortgagor, where the invalidity, if any, in the original ap-

pointment has been cured as against the first mortgagee and mortgagor by subsequent orders, with jurisdiction, and the court has appropriated the funds in the receiver's hands for the purposes of the foreclosure suit.

[Decided April 29, 1902.]

Error to the District Court, Sweetwater County, Hon. Richard H. Scott, Judge of First District, presiding.

Jennie Anderson brought this suit against Heriot Riddle to recover a certain sum of money alleged to have been collected by the defendant from sundry persons occupying certain premises as tenants of one Charles H. Bussey in the Town of Rock Springs. Plaintiff alleged that defendant had collected the same without authority of law, and that on December 11, 1897, the said Bussey, for a valuable consideration, assigned the said money and the right to receive the same from the defendant to the plaintiff. That notice of the assignment had been given and demand had been made for the amount alleged to have been so collected.

The defendant, by his answer, justified his collection of the money under his appointment as receiver of the rents and profits of the property in a cause brought by one Hannah Matthews for the foreclosure of a mortgage held by her on the property, and denied that any part belonged to Bussey. He further alleged that one John H. Anderson was a party to that suit, holding a first mortgage on the property, and set forth certain proceedings therein affecting said Anderson, whereby he had recognized the receivership. He also showed by the answer a subsequent order approving his accounts as receiver, and confirming the original appointment. It was charged that the plaintiff was not the real party in interest, but that John H. Anderson was such party, and that the pretended assignment was made in the latter's interest, for the purpose of defrauding said Hannah Matthews of the income from the property under the receivership.

By reply the plaintiff denied the allegations of the answer as to her interest, and denied the validity of defendant's ap-

pointment as receiver, alleging that the appointment was made when no case was pending in the court, and without jurisdiction.

Judgment was rendered for defendant, and plaintiff prosecuted error.

*E. E. Enterline* and *D. A. Reavill,* for plaintiff in error.

An action for money had and received is always maintainable whenever defendant receives money from plaintiff or third person which in equity and good conscience he ought not to retain. (Pierson v. Furmann, 1 Col. App., 187; Fulton v. Ins. Co., 21 N. Y. S., 470; Mason v. Prendergast, 120 N. Y., 536; Walker v. Conant (Mich.), 31 N. W., 786; Hindmarch v. Hoffman, 127 Pa., 284; Barnett v. Warren (Ala.), 2 So., 457; Brand Co. v. Williams (Minn.), 13 N. W., 42; Finch v. Park, 12 S. D., 63.)

The defendant used the plaintiff as a witness in his behalf. Over repeated objections to questions propounded by defendant's counsel, and by the court, she was compelled to testify in detail as to the transaction between herself and Bussey relative to the transfer of the real estate and assignment of the rents, and to the fact that at the time she purchased she knew that the foreclosure action was pending, and that her brother had a mortgage on the real estate, concerning which there was litigation.

The evidence was not competent or material. The defendant pleaded that the real estate was deeded to plaintiff, and the plaintiff admitted that such was the fact in her reply. The court would not have been authorized to find against the admission in the pleadings. (Schlessinger v. Cook, 9 Wyo., 256.)

Again, the evidence could not have been competent or material on the theory that the plaintiff was not the real party in interest. She acquired whatever rights Bussey and wife, or either, had to the rents and profits of the real estate and to the realty. It is admitted that Bussey is the owner of the real estate, and was at the time stated in the

petition, and it is admitted that the plaintiff owned the realty at the time alleged in her second petition, and that the moneys were owing to her, because it is not denied. There is no doubt as to the assignability of the right of action. (Bliss on Code Pl., Secs. 47, 57; Pomeroy Code Rem., Secs. 125, 126 et seq., 147-151.)

Even if Bussey had retained an interest in the fund, which it is not claimed, it does not concern the defendant. (Bliss on Code Pl., Sec. 51.) The admission of immaterial testimony is error. (Rock Springs National Bank v. Luman, 5 Wyo., 159; Marsteller v. Leavitt (Cal.), 62 Pac., 384; Parke v. Boulware (Idaho), 63 Pac., 1045.)

We also insist that the defendant did not plead sufficient facts to show that the plaintiff was not the real party in interest. The mere allegation that the plaintiff is not the real party in interest is not sufficient to raise the issue. (Pom. on Code Rem., Secs. 132 et seq. and 711; Philips on Code Pl., Secs. 343, 383.)

But, conceding, for the sake of argument, that the question was properly raised by the pleadings, and evidence was properly admitted in support of the issue, the proof is overwhelming that an adequate consideration was paid Bussey.

The testimony of the plaintiff and her brother conclusively shows that their father, who had $1,000 invested in the mortgage given by Bussey to plaintiff's brother, John H. Anderson, directed the latter to give $1,000 to plaintiff. John did this by giving Bussey credit for $1,000 on December 11th, 1897, on the $4,000 note secured by the said mortgage, and Bussey, for that consideration, deeded the realty and assigned the back rents to plaintiff.

Over objection that the same was incompetent, irrelevant and immaterial, the defendant was permitted to introduce in evidence certain pleadings, papers, files, orders of court. The object of the offer no doubt was to prove that the defendant was appointed receiver in said cause, and that he was holding the moneys sought to be recovered by the plaintiff by virtue of said appointment.

The order made on January 30th, 1897, was made before any summons had issued in the cause subsequently commenced, without notice of any kind on the defendants in that suit, and without either of the defendants ever having entered any appearance. Under our statutes a receiver may be appointed *inter alia* in an action to foreclose a mortgage where the property is probably insufficient to pay the mortgage indebtedness. (Rev. Stats., Sec. 4054.) An action must be commenced by the filing of a petition and the issuance of a summons. (Rev. Stats., Sec. 3507.) Jurisdiction of the court does not attach until the petition is filed and the summons issued. (Whit. Ann. Code, Sec. 5035; Seibert v. Switzer, 35 O. St., 661; Bazell v. Belcher, 31 O. St., 572.)

An appointment of a receiver bears a similar relation to courts of equity that proceedings in attachment bear to courts of law, and both are proceedings merely ancillary or auxiliary to the main action. (R. R. Co. v. Sloan, 31 O. St., 1.) And the Supreme Court of this State held that jurisdiction in a replevin suit commenced in the District Court attached after the filing of a petition and the issuance of a summons. (Clendenning v. Guise, 8 Wyo., 91.)

It is the universal rule that before a receiver can be appointed where it is proper that an appointment can be made, there must be an action—one commenced and pending—and an order appointing a receiver before the commencement of the suit is null and void. (Smith on Receivers, 35, 602; Beach on Receivers, Sec. 50; High on Receivers, Sec. 17; 2 Beach on Modern Equity, Secs. 931, 970; 17 Ency. Pl. & Pr., 684; 20 Ency. Law. (1st Ed.), 24; Bank v. Kent, 43, Mich., 296; Jones v. Schall, 45 Mich., 296; Pressly v. Harrison, 102 Ind., 18; State v. Bank (Ind.), 44 N. E., 588; Jones v. Bank (Colo.), 17 Pac., 272; Mfg. Co. v. Holland (Idaho), 27 Pac., 413; Guy v. Doak, 47 Kan., 236; Murray v. Superior Court (Cal.), 62 Pac., 193.)

It is an elementary principle that a void order is subject to collateral attack, and requires no direct proceeding for

its reversal, and as the order made on January 30th, 1897, is absolutely void, the plaintiff had a right to attack it in the suits instituted by her. (Vanfleet's Collateral Attack, Secs. 14, 16; 1 Black on Judgments, Sec. 278; 17 Ency. Pl. & Pr., 752; McGee v. Hays, 127 Cal., 336; Baker v. Varney (Cal.), 62 Pac., 100; McCord-Brady Co. v. Mills, 8 Wyo., 258; Chambers v. Hodges, 33 Tex., 104; Ferguson v. Jones (Or.), 20 Pac., 842; Frankel v. Satterfield (Del.), 19 Atl., 898.) And this has been applied to the void appointment of receivers. (Guy v. Doak, *supra;* Thurber v. Miller (S. D.), 75 N. W., 900; State v. Sup'r Ct., 7 Wash., 77; Whitney v. Bank, 71 Miss., 1009; McGee v. Hays, *supra;* Baker v. Harney, *supra.*)

Neither the order made January 29th, 1898, denying the application of John H. Anderson to vacate the order of January 30th, 1897, nor the order made upon application of Riddle, on March 8th, 1898, could vitalize the original order, nor make the evidence offered competent. (Black on Judgments, Sec. 278; Vanfleet's Collateral Attack, Secs. 14, 16; Frankel v. Satterfield, *supra;* Seibert v. Switzer, *supra;* Thurber v. Miller, *supra;* Smith v. Los Angeles (Cal.), 34 Pac., 242; Anderson v. Matthews, 8 Wyo., 307.)

The order made January 30th, 1897, would not be competent to prove that Bussey was enjoined from assigning the rents or collecting them. It was void, and, besides, as shown by the offer, no undertaking was ever given in injunction, nor does the order provide for one. No injunction, unless by special statute, operates until an undertaking is given and approved, in a sum fixed by the court. (Rev. Stats., Secs. 4043, 4046.) And there is no contempt in disobeying a void order. (State v. Dist. Court (Mont.), 53 Pac., 272.)

The order of confirmation is of no force, for the reason alone that the application was not made by one of the parties to the action. Riddle was not a party to that suit, and, of course, had no right to apply for an order of confirmation. (Matthews v. Anderson, *supra.*)

The defendant was permitted over objection to introduce

in evidence two letters. One claimed to have been written by D. A. Reavill to Bussey, and one claimed to have been written by the latter to John H. Chiles. An examination of the letters disclose that Chiles was trying to get Bussey to assign the rents to him, or, rather, to Mrs. Matthews, and that Reavill protested against it. Reavill's signature was not proven, nor was it proven that Bussey ever received the letter. The declarations of Mr. Reavill, even if against plaintiff's interest, which they are not, would not be binding upon the plaintiff, unless it was shown that it was in a matter in the line of his authority and while acting for the plaintiff, and then, of course, it would have to be upon a material matter in issue. (Rock Springs National Bank v. Luman, 5 Wyo., 159; 6 Wyo., 123.) And the fact that Bussey was attempting to assign the rents after having assigned them to plaintiff would not be competent, and, besides, the letter was hearsay. (Toms v. Whitmore, 6 Wyo., 221.)

The case was tried more upon the theory generally advanced in cases where fraudulent assignments or transfers of property in fraud of creditors form the issue. To us, in view of the authorities, there can be but one defense on the part of the defendant, namely, he must show a valid appointment as receiver, and failing, as he did, in that, the plaintiff must prevail.

*John H. Chiles,* for defendant in error.

Under the law plaintiff was charged with actual notice of the contents of her deed, and that Heriot Riddle had or claimed a right to the money in controversy. She had actual notice of the pendency of the suit, and of each step taken in the case of Hannah Matthews v. Charles H. Bussey, et al., and that the defendant in error had been appointed receiver of and was in possession of the property for the benefit of Hannah Matthews.

Hannah Matthews was a creditor of Bussey and wife, and as such had endeavored (if she had not completely done so) to fasten a lien upon the money in controversy. She had

a perfect right, under the law, to seek a satisfaction of her claim. The plaintiff in error had no claim upon either Bussey and wife or the property, and there was no obligation upon her or any reason why she should purchase the property, to secure any indebtedness, because none existed from Bussey and wife to her, unless her motive was to aid her brother, John H. Anderson, and defeat Hannah Matthews.

She must show, to make a good title, that she was a bona fide purchaser; and the burden is upon her to establish: (1) That she had no notice of outstanding title; (2) that the purchase was upon valuable consideration; (3) that the consideration was paid before she obtained notice. (Blanchard v. Taylor, 12 Mich., 339; Weber v. Rothschild, 15 Ore., 385; Deve v. Brandt, 53 N. Y., 462; Lynch v. Beecher, 38 Conn., 490; Porter v. Parks, 49 N. Y., 464; Leod v. Bank, 42 Miss., 99; Jewett v. Palmer, 7 Johns. Ch., 360; Jackson v. McChesney, 7 Cow., 360; Tiedeman on Sales, Sec. 329; Wait, Fraud. Conv. (2nd Ed.), Sec. 369.)

"When the summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency; and while pending, no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title." (R. S., Sec. 3528; Bacher v. Shawhan, 41 O. S., 271; Ludlow v. Kid, 3 O., 541; Bennet v. Williams, 5 O., 461; Tolerton v. Williard, 30 O. S., 579; Collier v. Bickley, 33 O. S., 523; Meisse v. McCoy, 17 O. S., 225.)

The argument of counsel to the effect that it don't make any difference whether Jennie Anderson had paid value or not; or whether she bought with notice, &c., and that Bussey and wife could have given the money to her, &c., is without merit and unsustained by the decision of any court, and not in consonance with any system of reason and justice.

The doctrine that a debtor's property is a trust fund for the benefit of his creditors, and that he must be just before he can be generous, has been too often adjudicated and is too elementary to need the citation of authorities to sustain.

Her right to this money (if any she has) depends upon the quitclaim deed and the circumstances under which it was executed, and if the circumstances surrounding that transaction do not amount to a purchase, her claim to the money must fail.

Generally, as against third persons, the recital of consideration in a deed is no evidence whatever, and as against a creditor the mere statement that a nominal consideration has been paid raises no presumption of a substantial consideration. In such case the burden is on the grantee to prove a sufficient consideration. (R. S., Secs. 2750-2751; 2 Jones on Ev., Sec. 476; Tutwiler v. Munford, 68 Ala., 124; Rose v. Taunton, 119 Mass., 99; Kelson v. Kelson, 10 Hare, 385; Abb. Tr. Ev. (2nd Ed.), 901; 6 Ency. Law (2nd Ed.), 765-2; Houseman v. Blackman, 66 Ala., 559; Hubbard v. Allen, 59 Ala., 283; Savings Bank v. McDonnell, 89 Ala., 434.)

The deed not being even prima facie evidence of a consideration, we are remanded to the testimony to see what the actual consideration was.

It needs no citation of authorities to prove that a person who has no interest in this money cannot question the validity of the order of appointment, or the right of Riddle to the possession of the money.

Plaintiff claims title by virtue of an alleged assignment from Bussey and wife, and this is denied by Riddle.

The trial court found in favor of defendant in error, Riddle, generally, and in accordance with a long established rule of this court if there be any evidence to sustain such finding this court will not disturb it. (Bryant v. State, 7 Wyo., 311; O'Brien v. Foglesong, 3 Wyo., 57; Jackson v. Mull, 6 Wyo., 55; Conway v. Smith Mer. Co., 6 Wyo., 468; Rock Springs Nat'l Bank v. Luman, 6 Wyo., 123; Boburg v. Prahl, 3 Wyo., 325; Ketcham v. Davis, 3 Wyo., 164; Telegraph Co. v. Monseau, 1 Wyo., 17; Bank v. Dayton, 1 Wyo., 336; Byrne v. Myers, 1 Wyo., 352.) An action must be prosecuted in the name of the real party in interest, &c. (R. S., Sec. 3467; R. S. Ohio, Sec. 4993.)

Under this section the assignee of an account or other chose in action may sue upon it in his own name, *if the legal and equitable title are both vested in him.* And the assignor need not be made a party *if he has parted with all his interest in the thing assigned.* But if either the legal or equitable title, or both, remain in the assignor, the action cannot be maintained in the name of the assignee. (Allen v. Miller, 11 O. S., 374; Osborn v. McClelland, 43 Ohio St., 284; 15 Ency. Pl. & Pr., 710 B.)

There was a distinction at the common law in regard to the assignability of things negotiable and non-negotiable, and that distinction is still preserved under that clause of the Code under consideration; and Mr. Bliss, at Sec. 51, Code Pleading, cited by counsel, was speaking of instruments which were by the common law negotiable when he says "it does not concern the defendant unless he has some defense against the real owner." But even if the subject in controversy were a negotiable instrument, it is only *prima facie* evidence of title and may be rebutted by defendant, and defendant in error comes clearly within the exception mentioned by Mr. Bliss, because he had a defense against the real owners (Bussey and wife), and it does concern him. (Hays v. Hathorn, 74 N. Y., 486; Osborn v. McClelland, 43 Ohio St., 284.) The suit was pending as against Bussey and wife when the alleged assignment was made. Personal service upon the wife and service under Sec. 3525, R. S. Wyo., 1899, had on Bussey, and the orders of March 8, 1898, and January 29, 1898, confirmed the order of appointment of the receiver. As the statutory provision declares that "Every action must be prosecuted in the name of the real party in interest," the defense that the plaintiff is not such real party in interest is, in general, a bar to the suit. This is certainly so when the plaintiff is the assignee of anything in action *not negotiable,* and the issue raised by an answer setting up such defense would be simply whether the plaintiff *was,* upon the proof, the real party in interest. (Pom., Code Rem. (3d Ed.), Sec. 128; 15 Ency. Pl. & Pr.,

712 C; Read v. Buffman, 79 Cal., 77; Bliss Code Pl., Sec. 231; Osborn v. McClelland, 43 Ohio St., 284; Hays v. Hathorn, 74 N. Y., 486; Allen v. Miller, 11 O. S., 374.) It is apparent that Bussey and wife still claim to own the money in controversy, because they were willing to sell to Mrs. Matthews long after the alleged assignment.

The orders of the court made on March 8, 1898, and on January 29, 1898, confirmed the order of original appointment and made it valid. Jennie Anderson was a party to the first mentioned order, and upon due notice, and if the original order was invalid this certainly cured it. (Hellebush v. Blake, 119 Ind., 349; Guy v. Doak, 47 Kan., 236; High on Receivers (2nd Ed.), 37; Robinson v. Dickey, 143 Ind., 214; Mer. Trust Co. v. Iron Works, 4 Ohio C. C., 579; Longworth v. McGrew, 2 Cin. Sup. Ct., 479; Kloune v. Bradstreet, 2 Handy, Cin. Sup. Ct., 77.)

She took no appeal from that order, nor from the original order, nor from the order of the District Court refusing to revoke the original order of appointment—and she cannot now be heard to question the validity of the appointment, even if it was originally invalid. (Rumsey v. People's Ry. Co., 154 Mo., 55; Smith on Receivers, 69; Palen v. Bushwell, 13 N. Y. Supp., 785; Battershall v. Davis, 31 Barb., 323; Manhattan Trust Co. v. Seattle, 16 Wash., 499; Skinner v. Lucas, 68 Mich., 432; 20 Ency. Law (1st Ed.), 109; Dickerson v. Bank (Ia.), 64 N. W., 395; Fasset v. Tallmadge, 13 Abb. Pr., 12.)

The admission of certain letters now complained of comes clearly within the rule laid down in Toms v. Whitmore, 6 Wyo., 220. (Wait Fraud. Conv., 280; Jones' Ev., 255; Abb. Tr. Ev., 237, 238; Underhill Civ. Ev., Sec. 69.)

POTTER, CHIEF JUSTICE.

This action was brought by Jennie Anderson against Heriot Riddle to recover a sum of money collected by the latter as rents from the tenants occupying certain real estate in Rock Springs, formerly owned by one Charles H. Bus-

sey. The plaintiff claimed to be entitled to the same by virtue of an assignment from Bussey. The money had been collected by Riddle in the discharge of his duties as receiver under an appoinment by the District Judge in a foreclosure suit instituted by one Hannah Matthews, the holder of a second mortgage upon the property. In that suit the plaintiff therein made the statutory showing for a receiver; but the plaintiff in the present action bases her right to disregard the appointment upon the ground that the order was made prior to the issuance of a summons in the case, and hence, as contended, when no action was pending.

The order was made January 30, 1897, and the receiver qualified by taking oath and giving bond, as required by the order, on or about February 2, 1897, and from that time until final decree in the cause continued to exercise the duties incumbent upon a receiver in such cases. A summons in the case was not issued until February 2, although the petition had been filed January 29, the day preceding the order appointing a receiver.

The mortgage held by Mrs. Matthews had been executed by Charles H. Bussey and wife, as had also the first mortgage held by one John H. Anderson. Bussey and wife, Anderson and the tenants in possession of the property were made defendants in the suit brought by Mrs. Matthews. Bussey and wife did not enter any appearance, and neither did their tenants. John H. Anderson, the first mortgagee, appeared, and on June 8, 1897, filed an answer and cross-petition, seeking by the latter the foreclosure of his mortgage, which was due, and asking for an order that the receiver theretofore appointed pay the rents for his use and benefit; but he made no allegation showing himself entitled to a receiver in aid of his mortgage. However, in January, 1898, he filed an amended answer and cross-petition, making a showing for a receiver, and asking that one be appointed for his benefit. He thereupon moved for the vacation of the order appointing Riddle on the ground of want of jurisdiction at the time to make the order, and also for a receiver in aid of his

mortgage. The motion being denied, he came to this court on error, and it was held by us that he was not in a position to question the validity of Riddle's appointment, since he had not been in possession of the property, nor shown himself entitled to the rents; but that the application for a receiver for his benefit of the rents thereafter to be collected should have been granted, leaving the rents previously collected by the receiver to be applied for the use of the second mortgagee, for whose benefit the receiver had been appointed. (Anderson v. Matthews, 8 Wyo., 513.)

On December 11, 1897, the plaintiff in the present suit, Jennie Anderson, received from Bussey and wife a quitclaim deed to the premises, the same containing also an assignment of the rents, issues, claims and demands of the grantors against any person for the use and occupancy of the property for any term prior thereto, and of all claims and demands of whatsoever nature that said grantors, or either of them, then had against the occupants of the premises (naming them) and Heriot Riddle, or either of them. Shortly thereafter the plaintiff demanded the money previously collected by Riddle, and upon his non-compliance with such demand, this action was commenced.

Early in March, 1898, Riddle presented a petition to the court, in the action wherein he had been appointed, asking for direction as to certain matters pertaining to the receivership, and for a confirmation of the order appointing him; the petition informing the court that the validity of the original order was being denied, and that the tenants were refusing to pay rents to him, having been notified by Jennie Anderson to refrain from doing so. A copy of that petition was served upon the tenants and also upon John H. Anderson and Jennie Anderson and Hannah Matthews, together with a notice of the time when it would be brought up for hearing. The petition was accompanied by a report of the receiver, showing his receipts and disbursements.

On the 8th day of March, 1898, the matter coming on to be heard, upon the petition aforesaid, before the Judge of the

District Court, the accounts of the receiver were approved, his actions confirmed, and the original order of January 30 was in all things confirmed. It was also ordered that the tenants pay all rents to such receiver.

On the 11th day of May, 1898, the foreclosure suit was finally heard and determined, and the premises decreed to be sold to satisfy, after the payment of costs, first the amount due to John H. Anderson, and, second, the amount due to Hannah Matthews; and a new receiver was appointed to collect rents for the benefit of said Anderson. The property was subsequently sold under the order of the court, and all the proceeds were ordered applied upon Anderson's claim.

On the 12th day of May, 1900, in pursuance of the mandate from this court in the case already referred to, the court made and entered its order to comply therewith so far as possible, in view of the fact that the cause had previously been determined. And it was ordered that the receiver, Heriot Riddle, pay to Hannah Matthews all moneys collected by him up to January 25, 1898, the date of the application of John H. Anderson for a receiver, and to the latter the rents collected after that date. The proper division of the expense of the receivership was also provided for by that order.

It should be stated that Jennie Anderson subsequently brought a second action to recover the rents collected after the commencement of the one already mentioned, and the two actions brought by her were consolidated for the purposes of trial. In both actions the defendant Riddle set up in his answer the proceedings of the court relative to his appointment stated above, and relied thereon as a defense to the action; but he also contested the fact of the assignment to the plaintiff, and denied that she was the real party in interest. It was averred, and insisted upon at the trial, that Jennie Anderson had taken whatever assignment had been made to her, for the benefit of John H. Anderson, and that the transaction was the result of a conspiracy or attempt to deprive Hannah Matthews of the benefits of the receiv-

ership. The case at bar was tried to the court in September, 1900, without a jury, and the court found generally for the defendant and judgment was rendered in his favor. Motion for new trial was overruled and plaintiff brings the case here on error.

It is clear that by the confirmatory order of March, 1898, the court assumed control of the fund then in the hands of Riddle as receiver. It was shown that since the commencement of the suit Riddle had collected a certain amount as rents from the tenants occupying the property; and the effect of the confirmatory order, even if it be conceded that the original appointment was invalid, was to appropriate the money held by the receiver for the purposes of the case. At the hearing on the petition of Riddle the judge had jurisdiction to appoint a receiver; and the confirmation of the order appointing him amounted, at least, to an appointment as of that date. That order was effectual and conclusive upon the parties and all others in privity with them. There can be no question but that John Anderson was bound by the order, and failing to take any steps to vacate it, he is concluded by it. As to him, the order of March, 1898, operated as a complete protection to the receiver; and had Anderson previously, but pending the suit, secured to himself an assignment from Bussey of the rents and of a supposed claim against Riddle, it would not have availed him in a suit to recover from Riddle the money collected by him, for the reason already suggested, that he became bound by the order confirming the receiver's appointment and also confirming his actions in the matter. (Burnham v. Dillon, 100 Mich., 352; id., 359; Hellebush v. Blake, 119 Ind., 349; Guy v. Doak, 47 Kan., 236; 27 Pac., 968; Greeley v. Provident Sav. Bank, 103 Mo., 212.) Bussey was also bound by that order. He was a party, and, moreover, publication to obtain constructive service upon him had then been made or was in progress; and it appears that at the time of the assignment he had actual knowledge of the pendency of the suit, and of the fact that a receiver had been appointed and was collecting the rents.

John Anderson had not only appeared in the action, but he moved the vacation of the original appointment of a receiver, on the very ground insisted upon in the present suit, and his motion was denied.   On error, the order of the court in that respect was not disturbed, as Anderson had not shown himself to be in a position to question the legality of the order.   It did not appear in that proceeding that he had become entitled to either posession of the property or the rents thereof.   It did appear that Jennie Anderson had received a deed to the property and claimed to have succeeded to Bussey's interest in the rents and the money in the receiver's hands, if any.   But the manner in which she had acquired that deed and interest was not disclosed.   Upon the record in the proceeding to discharge the receiver Jennie Anderson appeared to stand as an entire stranger.

In the suit at bar her position is revealed; and we will proceed to inquire into the matter, to ascertain whether she was in a situation to be bound by the orders in the foreclosure suit respecting the appointment of the receiver, and the distribution of the fund in his hands.   It is contended by her counsel that no order confirming or validating the appointment of Riddle as receiver made subsequent to the assignment to her can be held to interfere with her rights; that as the receiver, at the date of the assignment from Bussey to the plaintiff, was acting under a void order, the money theretofore received by him belonged to Bussey, who, for value, assigned them to the plaintiff, and that the relative right of the parties could not be altered by an order made afterwards in the foreclosure action to which she was not a party.

We have stated that the court had jurisdiction to make the order of March, 1898, confirming the original appointment.   In that connection we should explain and dispose of one proposition insisted upon by counsel for plaintiff in error.   It is argued that Riddle, being a mere officer of the court, and not a party to the foreclosure suit, had no right to independently ask a confirmation of the order under which he was acting.   Should that point be conceded, it would not

affect the question of jurisdiction. It would only go to show that the petition in that respect might have been successfully opposed by a party to the suit, or an intervenor; but the action of the court in granting the prayer of the petition would be merely irregular and not void. The court doubtless had jurisdiction to confirm the original order upon it own motion. It possessed jurisdiction over the subject matter and the parties. (Robinson v. Dickey (Ind.), 42 N. E., 638.)

It is shown by the testimony of Jennie Anderson, the plaintiff herein, that at the time of the assignment to her she was cognizant of the pendency of the foreclosure suit, and that her brother, John H. Anderson, had a mortgage upon the property; and we think the trial court would have been justified in finding that her knowledge extended to the fact that the foreclosure of her brother's mortgage was sought in the suit. Upon that particular question her answers were perhaps rather indirect and unsatisfactory; but in view of her whole examination, and the circumstances attending the transaction, we think it fairly appears that she clearly understood the situation. She stated positively that she knew her brother had a case in court. Moreover, she testified that the transfer of the property and the claim against Riddle was brought about through the agency of her brother and his attorney. She stated in substance that she let her brother attend to the business, because he knew more about it than she did, and that he and the lawyers arranged the matter. Her testimony is fairly to be understood also as indicating that the proposition that she should take an assignment came to her from her brother. She could not have been more than twenty or twenty-one years old at the time—December, 1897—as on the trial in September, 1900, she gave her age as twenty-three.

The money consideration for the assignment was not in her possession and had never been. It was under the control of her brother. And, although it is testified that the sum mentioned as consideration, one thousand dollars, had been

given to her by her father, through her brother, John, it clearly appears that, until the assignment, nothing had been done toward legally transferring to her either the money or any evidence or equivalent thereof.

Jennie Anderson was called as a witness by the defense, and on cross-examination the consideration for the assignment, and the manner in which she acquired it was brought out as follows:

"Q. I will ask you whether it isn't a fact that this thousand dollars came this way; that thousand dollars was included in the original mortgage of John, your brother?

A. Yes, sir.

Q. And this thousand dollars was originally given to John and was part of the consideration of his mortgage?

A. Yes, sir.

Q. And that subsequently, at the time this deed was made, I will ask if it isn't a fact the deal was made through one of your attorneys, Mr. Reavill, and this thousand dollars your father had, went to you, through his direction to John?

A. Yes, sir.

Q. And was the consideration in this deed?

A. Yes, sir.

Q. I will ask you whether or not it is true if John gave Mr. Bussey credit on his note for a thousand dollars?

A. Yes, sir.

Q. That is the way the deal was made?

A. Yes, sir.

Q. That John owed your father a thousand dollars, which was part of the loan to Bussey, and that subsequently your father directed that thousand dollars to go to you?

A. Yes, sir.

Q. And John gave it to you by giving credit on his note and having Bussey transfer this property to you, including back rents?

A. Yes, sir.

Q. You understood that at the trial, didn't you, in consultation with your attorney, Mr. Reavill?

A. Yes, sir."

John Anderson testified, as a witness in rebuttal for plaintiff, that the thousand dollars was in the Bussey note held by him; that he loaned Bussey four thousand dollars, of which amount his father furnished one thousand, and he owed his father that amount; that the note came due, and his father told him to give Jennie the money, and he did so by crediting the amount on the Bussey note, and having the transfer of the property and rents made to her, the credit being entered at the time of the transfer. He testified that the direction to give Jennie the money was made about the time the note fell due, about July in either 1895 or 1896.

In his cross-petition, filed in June, 1897, he claimed the entire face of the note and mortgage, but in his amended pleading of January, 1898, it was alleged that one thousand dollars had been paid. It is to be understood from the testimony, we think, that the father of John and Jennie Anderson knew that the money sent by him to John had gone into the Bussey loan. John states that when the Bussey note came due his father expected the money, and that he wrote and told him just how it was.

Upon these facts we do not see how the conclusion can reasonably be avoided that the plaintiff in error was in privity with her brother, and concluded by the orders in the foreclosure suit to the same extent that he was concluded. We are of the opinion that this result follows from whatever view may be taken of the assignment from Bussey to plaintiff in error.

The trial court found generally for the defendant, and nothing in the record discloses the particular theory upon which the finding was based. If the court regarded the transaction as one entirely for the benefit of John Anderson, and the taking of the deed to Jennie as a mere subterfuge, we would not be prepared to say that it was error. The explanation of the manner in which the deal was brought about is hardly satisfactory on the theory that Jennie Anderson was alone the interested party. Admitting that she was to receive one thousand dollars that was owing by her brother to her

father, it seems rather unreasonable that the obligation to her should have been fulfilled by the transfer of a claim to be made good, and recovered, if at all, only by litigation in the courts. But it is not necessary that we rest our decision upon that consideration, nor are we inclined to do so. If it be conceded that the assignment was taken by plaintiff in error in good faith in lieu of the money ·directed to be given to her, the determination must nevertheless be adverse to her right to recover. Whatever she received was acquired from her brother out of the note and mortgage involved, at the time, in the foreclosure suit. It is true the paper evidence of her right was executed by Bussey, but the consideration was paid by John Anderson, and doubtless Bussey would have named any other grantee, had Anderson suggested it. The transfer was arranged by the latter as a method of turning over to his sister the money that, according to his statement, he owed their father; and the effect is not different than if the transfer had first been made to him, and he had then executed an assignment to plaintiff in error.

The latter took the assignment from a party to the foreclosure suit, with actual notice of the pendency of that suit, and that the plaintiff therein, the holder of a junior mortgage, had asked for a receiver of the rents, and that an appointment was not only attempted, but that the receiver appointed had assumed control of the property and was collecting the rents. Not only that, but she parted with no new consideration. The money had before that been paid to Bussey. He received it when he took the loan; and upon the testimony of both plaintiff and her brother, she had become beneficially interested in the first mortgage to the extent of her father's interest therein.

As against that mortgage, as well as against the mortgagor, the receiver was sought, and attempted to be appointed, if that appointment was void as claimed, and the appointment at a later time confirmed, and the rents in the receiver's hands administered by the court when it had ample jurisdiction in the premises. She made no opposition to the subse-

quent orders, and did not offer to intervene to show her right. Owing to the interest in the mortgage to which she succeeded, as well as her interest in the property and rent under the deed to her, she was directly interested in the suit, and refused or neglected to appear and avail herself of her right, if she had any. It would seem, therefore, that she ought to be concluded by the proceedings as effectually as if she had been a party named on the record. (Williams v. Snebly, 92 Md., 9.) Indeed, on the petition of Riddle for confirmation of his appointment, she was named as a defendant, and was duly notified thereof. The court had jurisdiction in March, 1898, to empower the receiver to collect and hold rents already due, as well as such as might thereafter accrue; that was the practical effect of the order, as to the rents already in his hands, if the invalidity of the original appointment should be conceded.

We are unable to assent to the proposition that pending the foreclosure suit, the first mortgagee, who was a party, and had appeared, could, pending the suit, transfer a partial interest in his mortgage to another having knowledge of the facts, so as to enable the transferee to avoid the effect of the adjudications in that suit, and recover the money in the receiver's hands that were appropriated by the court when it had jurisdiction to do so. The plaintiff's interest in the mortgage was represented by her brother in the suit, who was the legal holder, and it is not perceived how she can escape the conclusive effect of the orders therein made respecting the receivership. Had she not been connected in any way with the first mortgage, and been an absolute stranger to the proceedings, a different question, possibly, might have been presented. But her interest in the rents, whatever they may have been, was derived by virtue of the note and mortgage held by her brother. Technically, an interest in the mortgage was not assigned, but she had an interest therein equitably under the gift from her father. The assignment of the rents with a deed of the property was substituted for a part of the amount represented by the mortgage. It would not be con-

tended, we think, that by her deed to the property she acquired any interest in it which would not be concluded by the decree in the suit pending for the foreclosure of the mortgages upon it, when she accepted the deed, even had she been without actual knowledge of the proceedings. The transfer of the rents and claim against Riddle was associated with the conveyance of the property, and embraced in the same instrument. Upon the showing made by the junior mortgagee, the latter was entitled to have the rents applied to her debt *pendente lite,* or until prior mortgagee made a showing entitling him to have them appropriated for his benefit. There can be no doubt that, had no assignment of the claim against the person alleged to have been illegally acting as receiver been made, the mortgagees would have been bound by the subsequent orders appropriating the income of the property in the receiver's hands, and would have been precluded from recovering them in any other suit, on the ground of lack of jurisdiction in the original appointment. In view of the manner in which plaintiff acquired the assignment, the consideration therefor, and her relationship, in matter of interest, to the first mortgage, and her actual knowledge of the facts and proceedings, we are unable to perceive that she is in any better position, or is entitled to any greater privileges. As to the moneys collected after the date of the deed to plaintiff, she showed no possible right, since the claims assigned were those then held by her grantors. But for the reasons stated we are of the opinion that she should not prevail in the suit against the receiver. The disposition to be made of the fund in his hands had, before the trial of the case at bar, been determined by a court with jurisdiction, and the position occupied by plaintiff was such as to render the determination conclusive upon her. She should have sought her relief, if entitled to any, in the other suit. The judgment of the District Court will be affirmed.        *Affirmed.*

CORN, J., concurs. KNIGHT, J., did not sit.